IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

C.H., as the parent of R.H., a minor child,

     Plaintiff,

vs.                                                                    No. CIV 11-0271 JB/LAM

LOS LUNAS SCHOOLS BOARD
OF EDUCATION, BERNARD SAIZ,
MARIO ZUNIGA, KELLY LEE and
RANCE HALL, GERALD SANCHEZ,
MICHAEL CARROLL, JAMES ROMERO,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion and Supporting Memorandum to Dismiss Plaintiff's Negligence Claim Under the New Mexico Tort Claims Act, filed May 19, 2011 (Doc. 19)("Motion to Dismiss").  The Court held a hearing on September 27, 2011.  The primary issue is whether Plaintiff C.H. has pled factual allegations that support a waiver of immunity under the New Mexico Torts Claim Act ("NMTCA"), N.M.S.A. 1978, § 41-4-6.  The Court will deny the Motion to Dismiss.  The Court finds that C.H.'s allegations go beyond negligent supervision and assert that the Defendants created a condition which posed a danger to all young football players at Valencia High School in Los Lunas, New Mexico.

## FACTUAL BACKGROUND

C.H. is the parent and legal guardian of R.H.  See Complaint for Violation of Constitutional Rights, Negligence, and Violation of Title IX, ¶ 1, at 1, filed March 29, 2011 (Doc. 1) ("Complaint").  R.H. was a student during the 2010-2011 school year at Valencia High School in Los Lunas, New Mexico, and was a member of the school's varsity football team.  See Complaint

¶ 12, at 2.  Defendant Los Lunas Board of Education ("Los Lunas Board"), based in Valencia County, is a governmental entity and public body that operates the Los Lunas School District ("Los Lunas School").  See Complaint ¶ 3, at 1.  Defendant Bernard Saiz is the Los Lunas School superintendent, and Defendant Mario Zuniga was the Principal of Valencia High School at all relevant times.  See Complaint ¶¶ 3-4, at 1.  Defendant Kelly Lee was the head coach of the Valencia High School football team in the Fall of 2010.  See Complaint ¶ 5, at 2.  Defendants Rance Hall, Gerald Sanchez, Michael Carroll, and James Romero were assistant football coaches in the Fall of 2010.  See Complaint ¶¶ 6-9, at 2.

In August 2008, approximately two years before the attack on R.H., members of a Las Vegas, New Mexico high school football team hazed other team members using sexual and other abusive conduct.  See Complaint ¶ 22, at 3.  This incident was widely publicized.  See Complaint ¶ 22, at 3.  During the Fall of 2010 football season, a group of senior Valencia High School football players were hazing their younger teammates.  See Complaint ¶ 13, at 2.  Before the October 2010 attack on R.H., other young players were attacked as part of the hazing.  See Complaint ¶ 21, at 3.  In October 2010, approximately three seniors attacked R.H. after practice when all players were in the locker room.  See Complaint ¶¶ 14-15, at 3.  The three seniors allegedly threw R.H. to the ground, and held him down while they physically and sexually battered him.  See Complaint ¶¶ 15-16, at 3.  Other members of the team watched and encouraged the attack.  See Complaint ¶ 17, at 3.  See Complaint ¶¶ 15-16, at 3.  Carroll and Sanchez are parents of two of R.H.'s student attackers.  See Complaint ¶ 21, at 3.  Because of the attack, R.H. experienced physical pain, suffering, and emotional distress.  See Complaint ¶ 18, at 3.  R.H., fearing retaliation at school and facing threats from students, transferred to a different school for the Spring 2011 semester.  See Complaint ¶ 23, at 3.

## PROCEDURAL BACKGROUND

C.H. filed the Complaint on March 29, 2011.  See Doc. 1.  The Complaint asserts four causes of action against the Defendants: (i) negligence under the NMTCA; (ii) violation of the Fourteenth Amendment to the United States Constitution; (iii) violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 168; and (iv) conspiracy to deprive R.H. of his rights under the Fourteenth Amendment and Title IX ("Civil Conspiracy claim").  See Complaint at 4-6.

On June 23, 2011, C.H. voluntarily dismissed Count III of the Complaint -- Violation of Title IX of the Education Amendments of 1972 -- against the Individual Defendants,[1] but not against the Los Lunas Board.  See Stipulated Order of Dismissal Against Individual Defendants of Count III -- Title IX Claim, filed June 23, 2011 (Doc. 22).  On August 30, 2010, C.H. voluntarily dismissed Count II of the Complaint -- Violation of 14th Amendment Right -- against the Individual Defendants, but not against the Los Lunas Board.  See Stipulated Order of Dismissal Against Individual Defendants of Count II -- Violation of 14th Amendment Right, filed August 30, 2011 (Doc. 26).  Finally, on January 11, 2012, the Court dismissed, at C.H.'s request, Count IV of the Complaint -- the Civil Conspiracy claim.  See Stipulated Order Dismissing Count IV Without Prejudice, filed January 11, 2012 (Doc. 39).

The Defendants filed their Motion to Dismiss, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, on May 19, 2011.  See Doc. 19.  In their Motion to Dismiss, the Defendants argue that C.H. failed to state a plausible negligence claim under the NMTCA.  See Motion to Dismiss at 2.  The Defendants assert that C.H. failed to allege facts which support a waiver of immunity under the NMTCA.  See Motion to Dismiss at 3.  The Defendants also argue that New

---

[1] Bernard Saiz, Mario Zuniga, Kelly Lee, Rance Hall, Gerald Sanchez, Michael Carroll, James Romero are collectively referred to as the "Individual Defendants."

Mexico courts have consistently required more than allegations of negligent supervision to waive immunity under § 41-4-6.  See Motion to Dismiss at 4.  The Defendants contend that C.H.'s Complaint contains conclusory allegations pertaining to the elements of negligence, which are insufficient to state a claim.  See Motion to Dismiss at 5 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The Defendants further contend that the Complaint lacks factual allegations which support a waiver of immunity and that C.H.'s conclusory allegations are not entitled to an assumption of truth without supporting factual allegations.  See Motion to Dismiss at 5 (citing Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009)).

The Defendants argue that C.H. attempted to plead more than negligent supervision, as Upton v. Clovis Municipal School District, 140 N.M. 205, 141 P.3d 1259 (2006) requires, when C.H. alleged that the Defendant's failed to educate football players about hazing.  See Motion to Dismiss at 5.  The Defendants contend that Upton v. Clovis Municipal School District requires that a plaintiff plead factual allegations beyond failed enforcement of safety policies for a court to find that the school district created a dangerous condition.  See Motion to Dismiss at 5.  The Defendants state that C.H. failed to provide factual allegations which imply that the Defendants knew of the hazing.  See Motion to Dismiss at 6.  The Defendants also argue that C.H. does not allege, nor plead facts to support, that the Individual Defendants were acting outside the scope of their duties and that they are therefore entitled to immunity under the NMTCA.  See Motion to Dismiss at  6-21.

On June 28, 2011, C.H. filed the Plaintiff's Response to Motion to Dismiss Negligence Claim.  See Doc. 23 ("Response").  C.H. argues that the Complaint properly pleads negligence against the Defendants, because the Complaint alleges that the Defendants knew or should have known that hazing was taking place in New Mexico, and that the Defendants failed to take proper action to protect younger members of the football team.  See Response at 3-4.  C.H. agrees that a

plaintiff must show more than mere negligent supervision under <u>Upton v. Clovis Municipal School District</u>, but asserts that the NMTCA "waives immunity for the operation or maintenance of a public building, which may include proof of negligent acts of employee supervision that is part of the operation of the building."  Response at 3 (citing <u>Upton v. Clovis Mun. Sch. Dist.</u>, 140 N.M. at 213, 141 P.3d at 1263).  C.H. contends that the Defendants' duty to supervise students is part of their duty to operate and maintain the school as a public building, and that the Defendants negligently supervised the locker room.  <u>See</u> Response at 3 (citing N.M.S.A. § 22-10A-3(D)(3)).

 C.H. argues that the Defendants failed to create a safe environment for student football players despite the Defendants' knowledge that student football players at other New Mexico schools engaged in hazing of a sexual nature.  <u>See</u> Response at 3.  C.H. asserts that the Defendants failed to create a safe environment for students by failing to educate the football team about hazing policies.  <u>See</u> Response at 3.  <u>See</u> <u>also</u> Complaint ¶ 22, at 3.  C.H. further asserts that before R.H.'s attack, Carroll and Sanchez' sons similarly hazed other football players, and that the Defendants should have known that the younger members of the team were subject to hazing.  <u>See</u> Response at 3-4.  <u>See</u> <u>also</u> Complaint ¶ 21, at 3.  C.H. argues that failure to educate or supervise the students in the face of a known dangerous condition is similar to the circumstances where the Supreme Court of New Mexico found immunity waived in <u>Upton v. Clovis Municipal School District</u>.  <u>See</u> Response at 4.  C.H. further contends that the circumstances of this case are similar to <u>Upton v. Clovis Municipal School District</u>, because hazing was a potential threat to every first-year member of the football team, and, in that case, the danger "created a dangerous condition for all special-needs children, and with regard to emergency responsiveness, for every student at the school." Response at 4 (quoting <u>Upton v. Clovis Mun. Sch. Dist.</u>, 140 N.M. at 211, 141 P.3d at 1265).  C.H. argues that, because other members of the football team were hazed in the same manner as R.H., this

case presents stronger facts than those in <u>Upton v. Clovis Municipal School District</u>, where the Supreme Court of New Mexico found immunity waived.  <u>See</u> Response at 4.  C.H. asserts that these facts "are directly alleged or naturally follow the allegations in the Complaint," and that the Court should deny the Motion to Dismiss and find immunity waived.  <u>See</u> Response at 4.

The Court held a hearing on September 27, 2011.  The Defendants requested that the Court grant their Motion to Dismiss, because C.H. failed to specifically plead facts sufficient to waive immunity under the NMTCA.  <u>See</u> Transcript of Hearing at 6:1-10 (taken September 12, 2011)(Esquivel)("Tr."); <u>id.</u> at 7:18-21 (Esquivel).[2]  The Defendants argued that C.H. did not plead the existence of systemic failures, such as those on which the Court relied in <u>Lymon v. Aramark Corp.</u>, 728 F.Supp.2d 1222 (D.N.M., July 7, 2010)(Browning, J.), and <u>Trujillo v. Salazar</u>, No. 04-0689, 2006 WL 1228827 (D.N.M., Mar. 1, 2006)(Browning, J.).  <u>See</u> Tr. at 6:7-10 (Esquivel).  The Defendants argued that, unlike the plaintiffs in <u>Upton v. Clovis Municipal School District</u>, C.H. has not sufficiently pled facts establishing negligent maintenance of a public building such that immunity is waived under N.M.S.A. 1978, § 41-4-6, or that the Defendants are responsible for exposing the students to a dangerous condition.  <u>See</u> Tr. at 10:14-25 (Walz).  C.H. argued that, under the NMTCA, a plaintiff must allege systematic negligence which creates a condition affecting a class of users and asserted that the Defendants created such conditions.  <u>See</u> Tr. at 12:4-11 (Loman).  C.H. represented that other students were similarly hazed in the days and weeks leading up to R.H.'s attack and that the Defendants allowed hazing to occur.  <u>See</u> Tr. at 12:11-15 (Loman).  C.H. contended that <u>Upton v. Clovis Municipal School District</u> establishes that a school's negligence will waive immunity under the NMTCA when a school's safety policies are not implemented.  <u>See</u> Tr.

---

[2]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

at 12:24-13:4 (Loman). C.H. argued that the school and coaching staff were on notice that some football players might need protection and that they should have established policies to protect those players, because of the heavily publicized hazing case at a Las Vegas high school. See Tr. at 13:13-18 (Loman). The Defendants responded that no systematic problem was pled in the Complaint and that a general knowledge of hazing in another community is insufficient to meet the NMTCA's waiver standard. See Tr. at 14:4-10 (Esquivel). The Defendants argued that C.H. failed to allege that the Los Lunas Board and the Individual Defendants knew of previous hazing incidents at Valencia High School and that this case is distinguishable from Upton v. Clovis Municipal School District, where knowledge of the pupil's health problems was widespread. See Tr. at 15:4-10 (Esquivel). The Defendants asserted that, in all the cases in which courts found immunity was waived, the entity had actual knowledge of the dangerous condition before the action occurred. See Tr. at 17:14-25-18:1-2 (Walz). The Defendants contended that here there was no notice to the Defendants that this hazing existed. See Tr. 17:14-25-18:1-2 (Walz). C.H. responded that the Complaint asserts that the Defendants should have known about the hazing, because of prior attacks in the same locker room by the same hazer, but that C.H. could not yet in good faith argue that the Defendants had actual knowledge of the hazing that was taking place at the school among the football players. See Tr. at 14:13-15:20 (Loman).

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept

as true all well pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Smith v. United States, 561 F.3d 1090, 1097 (10th Cir. 2009); Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 674 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 674 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp v. Twombly, 550 U.S. at 545 (citation omitted).  To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 665 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).  The United States Court of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line

-8-

from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

## LAW REGARDING THE NEW MEXICO TORTS CLAIM ACT

The New Mexico Legislature enacted the NMTCA, because it recognized "the inherent unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity." N.M.S.A. 1978, § 41-4-2(A).  The New Mexico Legislature also recognized that "the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done." N.M.S.A. 1978, § 41-4-2(A).  As a result, the New Mexico Legislature declared that New Mexico public policy rendered governmental entities and public employees liable only within the NMTCA's limitations and in accordance with the principles established in that act. See N.M.S.A. 1978, § 41-4-2(A).  The NMTCA is the only remedy against a governmental entity or public employee for any tort for which the NMTCA waives immunity.  See N.M.S.A. 1978, § 41-4-17(A).  "[N]o other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against a public employee or his estate whose act or omission gave rise to the suit or claim." N.M.S.A. 1978, § 41-4-17(A).  A plaintiff may not sue a governmental entity of New Mexico or its employees or agents unless the plaintiff's cause of action fits within one of the exceptions listed in the NMTCA.  See Begay v. State, 104 N.M. 483, 486, 723 P.2d 252, 255 (Ct. App. 1985)("Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act."), rev'd on other grounds by Smialek v. Begay, 104 N.M. 375, 721 P.2d 1306 (1986).

-9-

The NMTCA is based on traditional tort concepts of duty and a reasonably prudent person's standard of care while performing that duty. See N.M.S.A. 1978, § 41-4-2(B).  The NMTCA's § 41-4-6 of exempts from immunity "liability damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings."  N.M.S.A. 1978, § 41-4-6.  This exception balances the principle that "government should not have the duty to do everything that might be done" with the desire "to compensate those injured by the negligence of public employees and to impose duties of reasonable care."  Cabos v. Doña Ana Cnty. Hous. Auth., 126 N.M. 418, 420, 970 P.2d 1143, 1145 (1998)(citations omitted)(internal quotation marks omitted).  To resolve the tension between these two goals, § 41-4-6 "grant[s] governmental entities and employees a general immunity from tort liability, [and] waives that immunity in certain defined circumstances."  Cabos v. Doña Ana Cnty. Hous. Auth., 126 N.M. at 420, 970 P2d at 1145.  The Supreme Court of New Mexico has explained that "the liability envisioned by [§ 41-4-6] is not limited to claims caused by injuries occurring on or off certain 'premises,' as the words 'machinery' and 'equipment' reveal."  Cabos v. Doña Ana Cnty. Hous. Auth., 126 N.M. at 421, 970 P.2d at 1146.  Section 41-4-6 "contemplates waiver of immunity where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government."  Bober v. N.M. State Fair, 111 N.M. 644, 653, 808 P.2d 614, 623 (1991)(citations omitted)(internal quotation marks omitted).  New Mexico courts have found that the waiver of immunity in § 41-4-6 does not extend to negligent supervision, see Pemberton v. Cordova, 105 N.M. 476, 478, 734 P.2d 254, 256 (Ct. App. 1987)(holding that the NMTCA did not waive the school board's immunity under the NMTCA where there was a claim only of negligent supervision and when a fight between students, not a

physical defect of the premises, caused the injury), negligent design, see Rivera v. King, 108 N.M. 5, 12, 765 P.2d 1187, 1184 (Ct. App. 1988), or negligent inspection, see Martinez v. Kaune, 106 N.M. 489, 491-92, 745 P.2d 714, 716-17 (Ct. App. 1987). The Supreme Court of New Mexico, in Bober v. New Mexico State Fair, declined to restrict liability under § 41-4-6 to injuries which resulted from a premises' physical defect, as the Court of Appeals of New Mexico did in Pemberton v. Cordova. See Bober v. N.M. State Fair, 111 N.M. at 652-53, 808 P.2d at 622-23. For the waiver to apply, the negligent operation or maintenance must create a dangerous condition that threatens the general public or a class of building users and must not just be a claim of negligent supervision, as the claims were in Pemberton v. Cordova. See Espinoza v. Town of Taos, 120 N.M. 680, 683, 905 P.2d 718, 721 (Ct. App. 1995). The Supreme Court of New Mexico has held that a school district's "failure to follow safety policies in place for all at-risk students appears to fall comfortably within the Section 41-4-6 waiver for 'operation or maintenance' of a public building." See Upton v. Clovis Mun. Sch. Dist., 140 N.M. at 211, 141 P.3d at 1265 (finding that "a school simply cannot operate in a safe, reasonable, and prudent manner without affording, at the very least, the health and safety services that students have been promised, and upon which parents have relied").

In Leithead v. City of Santa Fe, 123 N.M. 353, 940 P.2d 459 (Ct. App. 1997), parents sued the City of Santa Fe on behalf of their daughter when she nearly drowned in a city pool. See 123 N.M. at 355, 940 P.2d at 461. Lifeguards failed to ask for children's ages and heights, even though regulations at the pool required adult supervision for children younger than seven and shorter than forty-eight inches. See Leithead v. City of Santa Fe, 123 N.M. at 354, 940 P.2d at 460. The Court of Appeals of New Mexico held that the "Plaintiffs' complaint was not restricted to a claim of negligent supervision," and found that the plaintiffs' complaint "correctly argue[d] that when City lifeguards did not adequately perform duties that were essential to public safety, they negligently

operated the swimming pool and thereby created a condition on the premises that was dangerous to [the child] and the general public." Leithead v. City of Santa Fe, 123 N.M. at 356, 940 P.2d at 462 (emphasis added).

The Supreme Court of New Mexico, in Upton v. Clovis Municipal School District, held that "a claim of negligent supervision, standing alone, is not sufficient to bring a cause of action within the waiver of immunity created by Section 41-4-6." 140 N.M. at 209, 141 P.3d at 1263 (citing Leithead v. City of Santa Fe, 123 N.M. at 356, 940 P.2d at 462). In Upton v. Clovis Municipal School District, the plaintiffs -- the parents of a deceased student, who collapsed and died from an asthma attack after a substitute physical education teacher required her to continue exercising -- appealed from the district court's grant of summary judgment in the school's favor. See Upton v. Clovis Mun. Sch. Dist., 140 N.M. at 206, 141 P.3d at 1260. The Supreme Court of New Mexico held that, "[i]f the only alleged misconduct toward Sarah had been the substitute P.E. teacher failing to watch her while she participated in physical exercise, the Upton's claim . . . would be practically identical to the single claim of negligent supervision we found inadequate in Espinoza." Upton v. Clovis Mun. Sch. Dist., 140 N.M. at 210, 141 P.3d 1264. It found, however, that the school's conduct went beyond negligent supervision, because: (i) the school ignored information that the plaintiffs provided them; (ii) the school failed to warn the substitute teacher about the student's condition; and (iii) the school failed to follow through with the proper emergency procedures. See Upton v. Clovis Mun. Sch. Dist., 140 N.M. at 210, 141 P.3d at 1264. "These actions and omissions combined to create the dangerous conditions, placing Sarah in a far worse position than reasonable and expected risks of [school] life." Upton v. Clovis Mun. Sch. Dist., 140 N.M. at 210, 141 P.3d at 1264 (internal quotation marks omitted). The Supreme Court of New Mexico also held that, "[s]imilar to Leithead, the School District's alleged failure to follow procedures established for at-

-12-

risk students appears to fall comfortably within the Section 41-4-6 waiver for <u>operation</u> or maintenance of a public building." <u>Upton v. Clovis Mun. Sch. Dist.</u>, 140 N.M. at 208, 141 P.3d at 1262 (internal quotation marks omitted)(emphasis added). It noted that "the reference to the general public . . . does not mean a condition that must be dangerous to the entire public, but rather, at least potentially, to the particular class of people that use the building or facility in question." <u>Upton v. Clovis Mun. Sch. Dist.</u>, 140 N.M. at 210, 141 P.3d at 1264 (citing <u>Espinoza v. Town of Taos</u>, 120 N.M. at 683, 905 P.2d at 721)(internal quotation marks omitted). Although only one child died in <u>Upton v. Clovis Municipal School District</u>, the school's failures created a dangerous condition for "all special-needs children, and with regard to emergency responsiveness, for every student at the school." 140 N.M. at 211, 141 P.3d at 1265.

In contrast, in <u>Espinoza v. Town of Taos</u>, the Supreme Court of New Mexico held that NMTCA immunity was not waived where a plaintiff's allegations concerned an inadequate number of day-camp personnel supervising children at a city playground. <u>See</u> 120 N.M. at 684, 905 P.2d at 722. It noted that the playground itself was safe, there were no gangs threatening the children, no roaming dogs, no influx of traffic, and no improperly maintained equipment. <u>See</u> <u>Espinoza v. Town of Taos</u>, 120 N.M. at 684, 905 P.2d at 722. It found that the Town of Taos did not waive immunity, because it was the day-camp undertaking that gave rise to a duty of care to the children, and not the existence of the playground itself. <u>See</u> <u>Espinoza v. Town of Taos</u>, 120 N.M. at 684, 905 P.2d at 722.

Additionally, in <u>Archibeque v. Moya</u>, the Supreme Court of New Mexico found no waiver of immunity under § 41-4-6. <u>See</u> 116 N.M. 616, 866 P.2d 344 (1993). There, an inmate at the Central New Mexico Correctional Facility, was transferred to the New Mexico State Penitentiary in Santa Fe, New Mexico. <u>See</u> 116 N.M. at 618, 866 P.2d at 346. Before he was released into the

prison's general population, Archibeque informed a prison intake officer that another prisoner was an enemy of his.  See Archibeque v. Moya, 116 N.M. at 618, 866 P.2d at 346.  Nevertheless, the plaintiff was released into the general population, and the other prisoner assaulted him that night. See Archibeque v. Moya, 116 N.M. at 618, 866 P.2d at 346.  Archibique sued the intake officer, other corrections officers, and the New Mexico Department Of Corrections in federal court for violations of 42 U.S.C. § 1983 and the NMTCA.  See Archibeque v. Moya, 116 N.M. at 618, 866 P.2d at 346.  The Supreme Court of New Mexico found that the misclassification was a discrete administrative decision which did not waive immunity.  See Archibeque v. Moya, 116 N.M. at 619, 866 P.2d at 348.  Furthermore, the Supreme Court of New Mexico explained that, while the misclassification put Archibeque at risk, "[t]he negligence did not create an unsafe condition on the prison premises as to the general prison population" and that "[r]eading Section 41-4-6 to waive immunity every time a public employee's negligence creates a risk of harm for a single individual would subvert the purpose of the Tort Claims Act."  116 N.M. at 620, 866 P.2d at 348.  The Honorable Richard E. Ransom, Chief Justice of the Supreme Court of New Mexico, further opined, in his concurring opinion, that an inmate's classification did not change a condition of the premises, and that the plaintiff's injury arose from the classification itself.  See Archibeque v. Moya, 116 N.M. at 622, 866 P.2d at 350 (Ransom, C.J., concurring).

In Lymon v. Aramark Corp. the plaintiff alleged that the defendant "negligently misclassified him for work in the prison kitchen contrary to his medically ordered restriction prohibiting heavy lifting."  728 F.Supp.2d at 1266.  This Court, following Chief Justice Ransom's concurrence in Archibeque v. Moya, held that the plaintiff's allegations that other inmates had been misclassified were insufficient to waive immunity under § 41-4-6.  See Lymon v. Aramark Corp., 728 F.Supp.2d at 1266.  It stated that, to fall within Chief Justice Ransom's concurrence, a misclassification "must

raise security risks, not health risks." Lymon v. Aramark Corp., 728 F.Supp.2d at 1266.  The Court found that the plaintiff's "threadbare allegations" that other inmates were misclassified did not rise "to the level of a dangerous condition on the premises of the penitentiary," because no other inmate was alleged to have been injured as a result.  Lymon v. Aramark Corp., 728 F.Supp.2d at 1267 (internal quotation marks omitted).

The Court has also addressed waiver of NMTCA immunity in several other opinions.  In Stark-Romero v. National Railroad Passenger Co. (AMTRAK), 805 F.Supp.2d 1145 (D.N.M. 2011)(Browning, J.), the Court held that immunity was not waived under § 41-4-6 for the plaintiffs ingress and egress from a waste transfer facility, because, although New Mexico is liberal in protecting people traveling on public land, such a duty would be without limits.  See 805 F.Supp.2d at 1177.  The Court found that the plaintiff's injuries, in that case, did not arise from an unsafe, dangerous, or defective condition of the defendant's property.  See Stark-Romero v. Nat'l RR Passenger Co. (AMTRAK), 805 F.Supp.2d at 1182.  In Trujillo v. Salazar, the Court found that immunity was not waived under § 41-4-6, because "the gravamen of the negligent operation claim against Salazar was not that Salazar himself ha[d] committed negligence by showing up to work every day."  2006 WL 1228827, at *9.  The Court further held that, "[t]o the extent that Trujillo may be arguing that Salazar negligently operated CNMCF by carrying on his employment at CNMCF after the first two alleged incidents, his decision to persist in his job was not a condition on the premises."  Trujillo v. Salazar, 2006 WL 1228827, at *9.

## NEW MEXICO NEGLIGENCE LAW

The NMTCA is based on traditional tort concepts of duty and a reasonably prudent person's standard of care while performing that duty.  See N.M.S.A. 1978, § 41-4-2(B).  See also Eckhardt v. Charter Hosp. of Albuquerque Pub. Sch. Sys., 124 N.M. 549, 559, 953 P.2d 772, 732 (Ct. App.

-15-

1997)("Plaintiff's negligence claims must be premised on a duty that Charter owed to Plaintiff, and it is for the court to determine as a matter of law whether such a duty exists." (citation omitted)); Johnson v. Sch. Bd. of Albuquerque Pub. Sch. Sys., 114 N.M. 750, 845 P.2d 844 (Ct. App. 1993)("Duty or responsibility is not provided in the Tort Claim Act; it must be found outside the Act either at common law or by statute.").  "Where there is no duty, there can be no negligence." Sw. Pub. Serv. Co. v. Artesia Alfalfa Growers' Ass'n, 67 N.M. 108, 117, 353 P.2d 62, 68 (1960).  See Herrera v. Quality Pontiac, 134 N.M. 43, 47-48, 73 P.3d 181, 185-86 (2003)("Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages."); Bierner v. City of Truth or Consequences, 136 N.M. 197, 201, 96 P.3d 322, 326 (Ct. App. 2004)("Consequently, the waiver of immunity in Section 41-4-4(A) of the TCA does not apply to the City because it had no duty upon which negligence could be premised.").

Under New Mexico law, "negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person."  Herrera v. Quality Pontiac, 134 N.M. at 48, 73 P.3d at 186 (internal quotation marks omitted).  New Mexico follows the principle "that a negligent actor only owes a duty to those whose injuries are a foreseeable result of the negligence."  Herrera v. Quality Pontiac, 134 N.M. at 52, 73 P.3d at 190.

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime unless the actor at the time of his [or her] negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself [or herself] of the opportunity to commit such a tort or a crime.

Herrera v. Quality Pontiac, 134 N.M. at 53, 73 P.3d at 191 (emphasis added).  "The duty element

of negligence focuses on whether the defendant's conduct foreseeably created a broader zone of risk that poses a general threat of harm to others." Herrera v. Quality Pontiac, 134 N.M. at 48, 73 P.3d at 186 (internal quotation marks omitted). The proximate-causation element of negligence "is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." Herrera v. Quality Pontiac, 134 N.M. at 48, 73 P.3d at 186. The Supreme Court of New Mexico opined on the duty element and the proximate-causation element of negligence, stating: "[T]he former is a minimal threshold legal requirement for opening the courthouse doors, whereas the latter is part of the much more specific factual requirement that must be proved to win the case once the courthouse doors are open." Herrera v. Quality Pontiac, 134 N.M. at 48, 73 P.3d at 186 (emphasis in original).

In Herrera v. Quality Pontiac, the plaintiffs sued the owner of a stolen vehicle for injuries caused by a collision with the owner's car when the owner left his keys in the car and the car unlocked at a garage. See 134 N.M. at 47, 73 P.3d at 185. The plaintiffs provided an affidavit asserting that Albuquerque has a high rate of automobile thefts, that thieves are much more likely to steal unattended vehicles which have keys in the ignition, and that stolen cars are much more likely to be involved in automobile accidents. See Herrera v. Quality Pontiac, 134 N.M. at 53, 73 P.3d at 191. The Supreme Court of New Mexico held that the affidavit established that the "[d]efendant's acts foreseeably created a zone of danger, which included Plaintiffs." Herrera v. Quality Pontiac, 134 N.M. at 54, 73 P.3d at 192. The Supreme Court of New Mexico found that the plaintiffs' injuries -- which a third-party car thief's dangerous driving caused -- were foreseeable and that the defendants owed a duty to the plaintiffs as a matter of law. Herrera v. Quality Pontiac, 134 N.M. 54, 73 P.3d at 192.

In Bober v. New Mexico State Fair, a motorist was injured in a collision with a vehicle as

it exited the state fairgrounds parking area onto abutting highway.  See 111 N.M. at 646, 808 P.2d at 616.  The motorist sued the state fair, state fair commission, and state police, and appealed the district court's grant of summary judgment in favor of the defendants.  See Bober v. N.M. State Fair, 111 N.M. at 646, 808 P.2d at 616.  The Supreme Court of New Mexico analyzed the duty owed to Bober and the foreseeability of the harm to determine whether immunity was waived under NMTCA § 41-4-6.  See Bober v. N.M. State Fair, 111 N.M. at 648, 808 P.2d at 618.

> Under the definitions of 'negligence' and 'ordinary care' in UJI Civil 1601 and 1603, the responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances . . . [e]very person has a duty to exercise ordinary care for the safety of others. Whether or not defendant breached [that] dut[y] is a question of the reasonableness of its conduct, and thus a fact question.

 Bober v. N.M. State Fair, 111 N.M. at 651, 808 P.2d at 621 (citations omitted)(internal quotation marks omitted)(emphasis added).  "What constitutes 'ordinary care' varies with the nature of what is being done. . . .  As the risk of danger that should reasonably be foreseen increases, the amount of care required also increases."  Bober v. N.M. State Fair, 111 N.M. at 648, 808 P.2d at 618 (emphasis added)(citations omitted)(internal quotation marks omitted).  The Supreme Court of New Mexico held that the state fair could not escape liability under the NMTCA, because they did not "adduce some evidence that it was unaware of the danger of an accident arising from a large number of cars exiting the Fairgound at one time following an event like the concert at Tingley Coliseum."  Bober v. N.M. State Fair, 111 N.M. at 652, 808 P.2d at 622.

In Castillo v. County of Santa Fe, 107 N.M. 204, 755 P.2d 48 (1988), the Supreme Court of New Mexico addressed whether to dismiss a complaint, because the defendants had immunity under § 41-4-6.  In that case, the mother of an injured invitee sued the operator of county-owned public

housing to recover damages for dog bite injuries.  See Castillo v. Cnty. of Santa Fe, 107 N.M. at

205, 755 P.2d at 49.  The Supreme Court of New Mexico noted that it, "assume[d] the truth of the

facts alleged in the complaint" and held that Castillo pled that the housing authority "was aware or

should have been aware of the continuing problem of loose-running dogs and the resulting danger

this condition posed for the common area of Valle Vista which the Housing Authority had the duty

to maintain in a safe condition."  Castillo v. Cnty. of Santa Fe, 107 N.M. at 206, 755 P.2d at 50

(emphasis added).  In finding that there was an unsafe condition, the Supreme Court of New Mexico

held that the "existence of a duty [rested] upon whether dogs roaming loose upon the common

grounds of a government-operated residential complex could represent an unsafe condition," and

found that, given the potential safety hazard for residents and their invitees, "loose-running dogs

could represent an unsafe condition upon the land."  Castillo v. Cnty. of Santa Fe, 107 N.M. at 207,

755 P.2d at 51. Ultimately, it held that "[t]he complaint sufficiently alleges facts that state a claim

upon which relief could be granted."  Castillo v. Cnty. of Santa Fe, 107 N.M. at 207, 755 P.2d at 51.

Roaming prisons gangs also present a danger to all inmates where the gang is known to be

violent and has access to weapons.  See Callaway v. N.M. Dep't of Corr., 117 N.M. 637, 643, 875

P.2d 393, 399 (Ct. App. 1994).  The Court of Appeals of New Mexico followed the reasoning of

Castillo v. County of Santa Fe, stating:

> In Castillo, our Supreme Court determined that the plaintiff had adequately stated a
> claim under Section 41-4-6 by alleging in the complaint that loose-running dogs on
> the common grounds of the county-owned and county-operated public housing
> project represented an unsafe condition, provided the county knew or should have
> known of the danger and that the danger was foreseeable.

Callaway v. N.M. Dep't of Corr., 117 N.M. at 642, 875 P.2d at 398 (emphasis added).  The Court

of Appeals of New Mexico held that the plaintiff had

> [s]tated a claim sufficient to waive immunity under Section 41-4-6 because

> Defendants <u>knew or should have known</u> that roaming gang members with a known propensity for violence had access to potential weapons in the recreation area, that such gang members created a dangerous condition on the premises of the penitentiary, and that the danger to other inmates was foreseeable.

<u>Callaway v. N.M. Dep't of Corr.</u>, 117 N.M. at 643, 875 P.2d at 399 (emphasis added).

## ANALYSIS

C.H. has alleged that the Defendants acted within the scope of their duties as educators when they were allegedly negligent, such that the NMTCA applies.  Additionally, C.H. successfully pled that the Defendants were negligent under traditional tort concepts.  C.H.'s allegations of negligence fall within § 41-4-6's waiver of immunity, because C.H. asserts that the Defendants' actions and omissions went beyond negligent supervision and created a condition which posed a threat to all the young football players on the Valencia High football team.

## I.     THE NMTCA APPLIES, BECAUSE THE DEFENDANTS ACTED WITHIN THE SCOPE OF THEIR DUTIES.

The Defendants argue that they are entitled to immunity under the NMTCA, because C.H. does not allege that the Individual Defendants acted outside the scope of their duties as school employees.  <u>See</u> Motion at 6-7.  The NMTCA states that "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by . . . . Sections 41-4-5 through 41-4-12 N.M.S.A. 1978."  N.M.S.A. 1978, § 41-4-4(A).  Immunity granted pursuant to N.M.S.A. 1978, § 41-4-4 (A) "does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings."  N.M.S.A. 1978, § 41-4-6(A). The New Mexico Legislature defined "scope of duty" to mean "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of

the time and place of performance."  N.M.S.A 1978, § 41-4-3 (G).  The Defendants, as licensed

public school employees, had the duty to "exercise supervision over students on property belonging

to the public school or state agency and while the students are under the control of the public school

or state agency."  N.M.S.A. 1978, § 22-10A-3(D)(3).

      C.H. does not allege that the Defendants were acting outside the scope of their duties as

school employees.  C.H. alleges that the Defendants acted negligently while acting within the scope

of their duties, stating: (i) "[t]he Defendants had a duty to exercise reasonable care in the operation

or maintenance of a public building"; (ii) "[t]his duty was owed to R.H., and other members of the

football team"; and (iii) "[t]he Defendant[s] breached their duty by negligently operating the football

locker room in a manner that allowed for the attack on R.H. to occur."  Complaint ¶¶ 26-28, at 4.

C.H. couches her arguments in the Response in terms of the NMTCA and concedes that the

NMTCA, along with its exceptions, provides the appropriate legal standard.  See Response at 4

("Pursuant to the TCA and its progeny of case law, immunity is waived in this case and Defendants'

Motion should be denied.").  Because there are no allegations that the Defendants acted outside of

the scope of their duties, the NMTCA applies, and the Court must determine whether immunity is

waived under N.M.S.A. 1978, § 41-4-6.  The issue is whether the Defendants performed their duties

"[t]o conform to legal standard of reasonable conduct in the light of the apparent risk."  Bober v.

N.M. State Fair, 111 N.M. 61 at 49, 808 P.2d at 629.

## II.    C.H.'S ALLEGATIONS OF NEGLIGENCE AGAINST THE DEFENDANTS FALL WITHIN THE § 41-4-6 WAIVER.

      In their Motion to Dismiss, the Defendants allege that C.H. fails to plead that the Defendants

had actual knowledge of hazing and that C.H. pleads nothing more than negligent supervision.  See

Motion to Dismiss, at 6.  To support their argument that C.H.'s allegations do not go beyond

negligent supervision, the Defendants rely on <u>Upton v. Clovis Municipal School District</u>, <u>Leithead v. City of Santa Fe</u>, and <u>Espinoza v. Town of Taos</u>.  <u>See</u> Motion to Dismiss at 4-6.  The Defendants contend that C.H.'s allegations are insufficient to establish waiver of immunity under the NMTCA. <u>See</u> Motion to Dismiss at 6.

The NMTCA is based on traditional tort concepts of duty and a reasonably prudent person's standard of care while performing that duty.  <u>See</u> N.M.S.A. 1978, § 41-4-2(B).

> Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages.  In New Mexico, negligence encompasses the concept of foreseeability of harm to the person injured and of a duty of care toward that person.

<u>Herrera v. Quality Pontiac</u>, 134 N.M. at 47, 73 P.3d at 186.  As the risk of the danger that should reasonably be foreseen increases, the amount of care required also increases.  <u>See</u> <u>Bober v. N.M. State Fair</u>, 111 N.M at 648, 808 P.2d at 618.  To determine whether C.H. has stated a claim, the Court must answer the following questions: (i) whether C.H. alleges that the Defendants knew or should have known about the danger -- hazing; (ii) whether the danger was foreseeable; and (iii) whether the Defendants exercised ordinary care for the safety of persons in R.H.'s situation.

The NMTCA waives immunity for "damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building."  N.M.S.A. 1978, § 41-4-6.  "Section 41-4-6 . . . contemplate[s] waiver of immunity where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government."  <u>Castillo v. Cnty. of Santa Fe</u>, 107 N.M. at 205, 755 P.2d at 49.  "A claim of negligent supervision, standing alone, is not sufficient to bring a cause of action within the waiver of immunity created by Section 41-4-6."  <u>Upton v. Clovis Mun. Sch. Dist.</u>, 140 N.M. at 209,

141 P.3d at 1263.

### A.     C.H.'S ALLEGATIONS GO BEYOND NEGLIGENT SUPERVISION AND ADEQUATELY ALLEGE THAT THE DEFENDANTS KNEW OR SHOULD HAVE KNOWN OF THE DANGEROUS CONDITION.

The Court finds that C.H. has pled sufficient facts under § 41-4-6 to state a claim for relief and satisfy rule 12(b)(6).  The Tenth Circuit has stated:

> [T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context: "Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case . . . ." A simple negligence action based on an automobile accident may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time. The complaint in <u>Twombly</u> was inadequate because the plaintiff failed to plead any facts to show "contract, combination . . . or conspiracy, in restraint of trade" beyond a bare allegation of parallel conduct that could be explained as identical but independent action. Given that the complaint encompassed scenarios under which the defendants conspired to engage in parallel conduct and those in which they did not, the Court found that the likelihood that the plaintiff would be entitled to relief, even if all of the allegations were true, fell short.

<u>Robbins v. Oklahoma</u>, 519 F.3d at 1248 (citations omitted).  Accordingly, less is necessary here for C.H. to survive a motion to dismiss than would be required in a more complicated case.  C.H. alleges that: (i) other Valencia High football players were similarly attacked; (ii) two of the assistant coaches -- Carroll and Sanchez -- were parents of two students who perpetrated the attack; (iii) the coaches were in another area of the locker room when the attack occurred; (iv) the Defendants failed to educate and instruct the football team about hazing; and (v) previous public incidents of hazing between members of a Las Vegas high school football team put the Defendants on notice that hazing could be a danger.  The Court finds that C.H.'s Complaint alleges facts sufficient to waive immunity under the NMTCA, because C.H.'s pleadings satisfy traditional tort concepts of negligence. Additionally, C.H. alleges that the Defendants' systematic failure to address the foreseeable danger of hazing led to the attack on R.H. and that the Defendants' negligence put a class of students --

young football players -- at risk.

While C.H. has admitted that she cannot, in good faith, allege that the Defendant's had actual knowledge of hazing at Valencia High School, see Tr. at 15:13-16:14 (Court, Loman), C.H. has satisfied the requirements of rule 12(b)(6) to survive a motion to dismiss.  C.H. alleges that the Defendants should have known that hazing occurred among New Mexico high school football teams and that they had a duty of ordinary care to protect those students.  C.H.'s Complaint states that, in "August 2008, there was another incident of hazing of a sexual nature between members of a high school football team in Las Vegas, New Mexico," which was "heavily publicized," and that those hazing incidents "should have served as a warning to other schools and football coaching staffs to take reasonable measures to prevent additional incidents of that nature."  Complaint ¶ 22, at 3 (emphasis added).  Accordingly, the Complaint alleges that the Defendants knew that hazing occurred in other high school football programs in the State and knew of the dangerous condition of student-on-student hazing.  When analyzing a motion to dismiss, the Court views the complaint's allegations in the light most favorable to the non-moving party and draws all reasonable inferences in the plaintiff's favor.  See Tellabs Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322. Accordingly, the Court takes as true the allegation that the Las Vegas hazing incident was a widely publicized scandal which should have served as notice of a foreseeable risk to the Defendants. See Complaint ¶ 22, at 3 ("That scandal has been heavily publicized over the last few years, and should have served as a warning to other schools and football coaching staffs to take reasonable measures to prevent additional incidents of that nature.").  Football coaches read sports pages and know what is going on with other football teams that are highly publicized; the Court can reasonably infer from the allegations that the Los Lunas football coaches would have known about the Las Vegas football incident.

-24-

C.H. asserts that the dangerous condition on the property was student-on-student hazing. C.H. alleges that, because the Defendants knew or should have known about the highly publicized abusive and sexual student-on-student hazing incident on a Las Vegas high school football team, the Defendants should have realized that football players at Valencia High School might haze other football players. C.H. asserts that the Defendants should have acted to prevent such abuse from taking place. The robust publicity surrounding the Las Vegas hazing incident all around New Mexico was a more explicit warning than the general knowledge of the high rates of car thefts in Albuquerque that the Supreme Court of New Mexico held was enough to create a foreseeable danger in Herrera v. Quality Pontiac. See 134 N.M. at 53, 73 P.3d at 191. Thus, C.H.'s allegations establish a more foreseeable danger than that held to be sufficient in Herrera v. Quality Pontiac, and the Defendants, much like the defendant in that case who should have foreseen that his car might be stolen and involved in a crash, should have foreseen that failing to educate the football team about hazing after the Las Vegas could create an environment which enables hazing. See 134 N.M. at 53, 73 P.3d at 191 ("Defendant's alleged conduct leaving the keys in the ignition of an unlocked and unattended vehicle arguably increased the likelihood that criminal acts would occur, which ultimately led to the accident in which Plaintiffs were injured, so that we impose a duty of ordinary care."). Young men who play high school football are high spirited and have lots of energy; one of the purposes of sports is to direct that energy by channeling it into exhausting activities that, at the same time, teach lessons which cannot be learned anywhere but in team sports. Coaches cannot think of everything these young men can think of doing and the trouble they can cause; but it is a reasonable inference that they are sensitive to trouble because they know, as coaches, that trouble can be destructive to team-building and winning. When they hear of trouble, it is reasonable to expect coaches to confront it. When they hear of a widely publicized incident at another school, it

-25-

is not reasonable for coaches to assume that it cannot happen on their team.  While young men will frequently think of new things to do which may cause injury, it is foreseeable that, if players hear of hazing at another school, and their coaches say nothing, upperclassmen may begin hazing younger players, because they have no reason to think that their coaches discourage it.  Silence with young men -- rather than coaching and mentoring -- increases the risk of hazing.

To adequately state a claim, C.H. need not assert that the Defendants <u>knew</u> that a dangerous condition existed at Valencia High.  <u>See</u> <u>Herrera v. Quality Pontiac</u>, 134 N.M. at 53, 73 P.3d at 191 ("The present case presents a claim whereby Defendant, arguably, knew or should have known that a theft was likely to occur, and Defendant's actions may have enhanced or increased the risk of such criminal conduct.").  It is sufficient that C.H. alleged  that the Defendants should have foreseen that hazing would pose a danger to Valencia High School's football players if no affirmative acts were taken to prevent hazing.  <u>See</u> <u>Bober v. N.M. State Fair</u>, 111 N.M. at 651, 808 P.2d at 621( "[T]he number of cars in the infield parking lot having to use the single exit into the heavily traveled street . . . [gave] rise to an inference that the State Fair could reasonably have foreseen the risk of an accident and that a reasonable landowner would have taken precautions to reduce the risk.").  C.H. need only allege facts, which make it plausible that a jury could find in her favor and the Court need not decide what action the Defendants should have taken -- which is a question of fact.  The Supreme Court of New Mexico, in <u>Herrera v. Quality Pontiac</u>, held that, even when an unknown superseding third party directly causes the plaintiff's injury, the defendant should have known of the risk that a third party might use his property to injure a person in the plaintiff's situation. <u>See</u> 132 N.M. at 53, 73 P.3d at 191.  A jury could reasonably find that the Defendants had a minimum duty to take some action to prevent hazing from taking place within their football team. <u>See</u> <u>Bober v. N.M. State Fair</u>, 111 N.M. at 648, 808 P.2d at 618 ("As the risk of danger that should

-26-

reasonably be foreseen increases, the amount of care required also increases."). C.H. alleges that the Defendants breached their duty, because they failed to act to prevent a foreseeable danger.

The Defendants "knew or should have known" that senior football members were engaging in hazing, and that hazing had occurred in other New Mexico football programs. See Callaway v. N.M. Dep't of Corr., 117 N.M. at 399, 875 P.2d at 643 ("Plaintiff has stated a claim sufficient to waive immunity under Section 41-4-6 because Defendants knew or should have known that roaming gang members with a known propensity for violence had access to potential weapons."). The Defendants allegedly knew or should have known that football players alone in a locker room presented a danger based on the Las Vegas hazing incidents, much like the roaming dogs or prison gangs presented a danger to certain populations when left unchecked. A teenager, like a loose dog, is not an obvious danger, but given the right circumstances a defendant may have reason to know or suspect that the loose dog presents a dangerous condition, as the Supreme Court of New Mexico held in Castillo v. County of Santa Fe. The senior football players may qualify as a dangerous condition of the property, because, "under the right circumstances," high school football players "could represent an unsafe condition" and threaten the safety of other students. Castillo v. Cnty. of Santa Fe, 107 N.M. at 207, 755 P.2d at 51 ("Given the potential for the safety of Valle Vista residents and invitees to be compromised by this situation, we find that, under the right circumstances, loose-running dogs could represent an unsafe condition upon the land."). Loose-running high school students, like loose-running dogs or roaming prison gangs, are capable of violence, and all three situations present a foreseeable danger. See State v. Christina E., No. 29,708, 2010 WL 3969485, at *1 (Ct. App. Jan. 21, 2010)("[T]he students were throwing punches and calling each other names, and this occurred in a school hall where others were located."). The highly publicized Las Vegas hazing incident involving sexual and physical abuse also highlights the

-27-

dangers of leaving high school football players to roam a locker room freely, and without any mentoring or coaching. C.H. alleges that the Defendants did not "adequately perform duties that were essential to the public safety," breached their duty by negligently operating Valencia High, and failed to maintain a safe environment, thereby creating "a condition on the premises that was dangerous" for young football players. Leithead v. City of Santa Fe, 123 N.M. at 356, 940 P.2d at 462. There is a maturity, strength, and often significant difference between upperclassmen and younger students, and the disparity requires the coaches to make certain that the environment is safe for the young players; coaches have to be in the face of older players to get them to accept younger players without threats to younger players' safety.

C.H. alleges that senior football members -- including two of the coaches' children -- had, over the course of the semester, engaged in hazing at Valencia High School and that hazing had occurred in other well-publicized incidents in New Mexico. Furthermore, C.H. implies that the Defendants should have known of the hazing, alleging that the Defendants negligently allowed a "culture to exist where students were being hazed." Complaint ¶ 29, at 4. The Court is required to view the facts most favorable to the Plaintiff and draw all reasonable inferences. Based on the allegations in C.H.'s Complaint, the Court is faced with the following facts: (i) that the Defendants had reason to know that hazing might present a danger, because of the Las Vegas hazing incident; (ii) that the Defendants took no steps to prevent hazing at Valencia High; (iii) that hazing occurred; and (iv) that R.H. was hazed and injured. These allegations taken together make it plausible that the Defendants should have known about the potential danger of hazing among high-school football players, and thus operated the school negligently by not supervising the football players and by doing nothing to prevent hazing. These allegations support a finding that immunity was waived, because they set out the Defendants' systematic failings to take steps to prevent hazing or act on the

information available to them.

Like Upton v. Clovis Municipal School District, where the parents had put the school on notice of their daughter's health conditions, C.H. alleges that Las Vegas football hazing scandals put the Defendants on notice of the dangers of student-on-student hazing and the likelihood of hazing taking place within high-school football teams.  See Complaint ¶ 22, at 3.  C.H. alleged that the Defendants' acts and omissions created a dangerous condition -- the existence of culture where students were being hazed -- placing R.H. "[i]n a far worse position than the reasonable and expected risks of school life."  Upton v. Clovis Mun. Sch. Dist., 140 N.M. at 210, 141 P.3d at 1264. See id. 140 N.M. at 208, 141 P.3d at 1262 ("Just as schools generally have safety procedures in place for various kinds of emergencies, a school simply cannot operate in a safe, reasonable, and prudent manner without affording, at the very least, the health and safety services that students have been promised, and upon which parents have relied.").  Under Upton v. Clovis Municipal School District, a plaintiff must allege more than negligent supervision -- in this case, more than negligent supervision of students -- for a court to find a waiver of immunity.  Instead, a plaintiff must plead that a chain of events, or a series of acts and omissions, led to his or her injury to waive immunity under the NMTCA.  See 140 N.M. at 209, 141 P.3d 1263 ("A complaint alleging nothing more than negligent supervision is not actionable. . . . Section 41-4-6 waives immunity for the operation or maintenance of a public building, which may include proof of negligent acts of employee supervision that is part of the operation of the building.").  Like Upton v. Clovis Municipal School District and Leithead v. City of Santa Fe where public officials failed to follow appropriate safety procedures, C.H. alleges that the Defendants failed to take appropriate steps to ensure player safety by educating the football players about the dangers of student-on-student hazing.  Here, C.H. does not rely on the fact that the coaches left the students alone in the locker room to establish her cause

of action; rather, she focuses her allegations on the fact that the Defendants knew or should have known of the danger of hazing, failed to act to prevent this foreseeable risk, and that her son was injured when the foreseeable risk materialized.

The line between what constitutes negligent supervision, and what constitutes negligent operation or maintenance of a public building is blurred, and is one that the Supreme Court of New Mexico has struggled to define. Bober v. New Mexico State Fair, Upton v. Clovis Municipal School District, Leithead v. City of Santa Fe, Castillo v. County of Santa Fe, and Callaway v. New Mexico Department of Corrections are all cases which could reasonably have been characterized as negligent supervision cases. The Supreme Court of New Mexico and Court of Appeals of New Mexico, however, found that the plaintiffs in these cases made allegations which went beyond negligent supervision, and alleged negligent operation or maintenance of a public building. C.H. alleges that the Las Vegas hazing incident gave the Defendants notice of the danger upperclassmen football players posed to younger students -- because they might haze the younger players -- and that the Defendants did nothing to mitigate that danger. The Court sees no discernable distinction between these allegations and those which have been found to state a claim under 41-4-6: (i) permitting an activity on state property that would result in concentrated traffic flow at a single point without adequate traffic controls; (ii) forcing an asthmatic student to exercise and subsequently failing to follow a safety plan; (iii) failing to ask a child her age and height at a swimming pool, in accordance with safety procedures, to see if she required supervision; (iv) failing to prevent loose dogs from roaming state-owned housing; or (v) allowing violent prisoners to use recreational exercise equipment, which could be used as weapons. The Court of Appeals of New Mexico has held that an "action may be brought under the [NMTCA] even though it may also involve elements of negligent supervision of children." Leithead v. City of Santa Fe, 123 N.M. at 354, 940 P.2d at

460.  Furthermore, in Seal v. Carlsbad Independent School District, 116 N.M. 101, 860 P.2d 743

(1993), the Supreme Court of New Mexico found that a school district could be held liable under

§ 41-4-6 for not ensuring that lifeguards were "present and acting as such" at a public swimming

pool.  116 N.M. at 104, 860 P.2d at 746.  In Espinoza v. Town of Taos, the Supreme Court of New

Mexico discussed Seal v. Carlsbad Independent School District in this manner: "There, the unsafe

condition of the premises was a swimming pool without the superintending lifeguard protection

require by statute."  120 N.M. at 684, 905 P.2d at 722.  Given this discussion, the language in Upton

v. Clovis Municipal School District -- that "a school simply cannot operate in a safe, reasonable, and

prudent manner without affording, at the very least, the health and safety services that students have

been promised, and upon which parents have relied," 140 N.M. at 211, 141 P.3d at 1265 -- and a

school employee licensing statute which, similar to Seal v. Carlsbad Independent School District,

requires supervision, see N.M.S.A. 1978, § 22-10A-3(D)(3) ("Each licensed employee shall . . .

exercise supervision over students on property belonging to the public school . . . ."), the Court

cannot fairly distinguish this case from the many others in which the Supreme Court of New Mexico

and Court of Appeals of New Mexico found that immunity had been waived under § 41-4-6.

The Court finds that C.H. has pled sufficient facts to survive a motion to dismiss under rule

12(b)(6) and to raise a right to relief under the NMTCA waiver of immunity above a speculative

level.  The Complaint presents facts supporting the claims that the Defendants negligently operated

and maintained the locker room after being put on notice of the dangers of hazing.  C.H. meets that

standard under the NMTCA, because she asserts that it was not the attack itself that was negligent,

but that the Defendants failed to act in face of a known danger, which resulted in R.H.'s injuries.

C.H. alleges that the Defendants should have known of the danger hazing presents to high school

football players, should have acted to educate the players about that danger, and should have been

aware of the hazing occurring at Valencia High, such that the Defendants failed to act in a reasonable manner with regard to the foreseeable harm that injured R.H.  Under rule 12(b)(6), the allegations in a complaint need only state a plausible claim for relief.  "[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."  Robbins v. Oklahoma, 519 F.3d at 1248 (citations omitted).  Here, C.H.'s allegations are not as complicated as many cases and thus require less specificity.  C.H. has alleged facts sufficient to establish the elements of negligence and to support a waiver of immunity under the NMTCA.

### B.    C.H. ALLEGES THAT ALL YOUNGER FOOTBALL PLAYERS, NOT JUST R.H., ARE AT RISK.

Under § 41-4-6, for waiver to apply, the negligent operation or maintenance of public building must create a dangerous condition that threatens the general public or a class of building users.  See Espinoza v. Town of Taos, 120 N.M. at 683, 905 P.2d at 721.  "Reading Section 41-4-6 to waive immunity every time a public employee's negligence creates a risk of harm for a single individual would subvert the purpose of the Tort Claims Act."  Archibeque v. Moya, 116 N.M. at 620, 866 P.2d at 348.  C.H. alleges that all younger football players were at risk.  See Response at 4.  Unlike Archibeque v. Moya and Lymon v. Aramark Corp., where only one prisoner was put in danger by the plaintiff's actions, C.H. alleges that senior football players were hazing younger football players in the fall of 2010, thus putting the latter group as a whole at risk.  While this group of seniors did not necessarily present a danger to all Valencia High students, this group presented a known danger to a subset of Valencia High students.  See Upton v. Clovis Mun. Sch. Dist., 140 N.M. at 211, 141 P.3d at 1265 ("Failure to respond appropriately to an emergency medical situation is a potential threat to every student in school because such a situation can occur at any time,

regardless of special health needs."). These allegations satisfy the requirement that a public employee's negligence put more than a single individual in danger, so as not to subvert the NMTCA's purpose.

Unlike Lymon v. Aramark Corp., where the plaintiff failed to plead that other inmates suffered injuries as a result of the alleged dangerous condition presented to all inmates, here C.H. alleges that other young football players had been hazed because of the Defendants' negligence and that R.H. was not the first attack. See Complaint ¶ 13, at 2. C.H. alleges that, like the gang in Callaway v. New Mexico Department of Corrections, the group of senior football players were dangerous to all younger football players. See 117 N.M. at 643, 875 P.2d at 399. This group, or class, of young football players meets the requirements stated in Upton v. Clovis Municipal School District, because C.H.'s reference to the attacks on other football players demonstrates that a particular class of people using the building were at risk. In Upton v. Clovis Municipal School District, the school created a dangerous condition that harmed only one child, yet the school's negligence threatened all at-risk students. See 140 N.M. at 211, 141 P.3d at 1265. Here, only R.H. reported his injuries, but C.H. alleges that the failures of the coaching staff and administrators to educate students about hazing or to take more protective measures created a danger to all younger football players at Valencia High. C.H.'s Complaint further asserts that other football players were similarly attacked, establishing that a subset of Valencia High students were at risk and that R.H. was not singled out, on an individual basis, for such treatment.

C.H.'s Complaint does not contain conclusory or formulaic recitations of the elements of a cause of action, nor are there threadbare recitals of the elements of a cause of action. To survive a rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)." Bell Atl. Corp v. Twombly, 550 U.S. at 545. Here, the Complaint sufficiently pleads factual allegations which indicate that the Defendants have waived immunity under the NMTCA, because of the foreseeable danger of hazing, and the Defendants subsequent negligent operation and maintenance of the school building. C.H. alleges that, not only were the football players negligently supervised, but that many factors -- including a failure to educate the team about hazing, a failure to address past hazing attacks on young football players, and a failure to take into account past hazing incidents at other schools -- created a dangerous environment for R.H. and other younger football players. The Complaint's allegations were sufficient to bring the gravamen of the C.H.'s case within the waiver of immunity provided by § 41-4-6.

**IT IS ORDERED** that the Defendants' Motion and Supporting Memorandum to Dismiss Plaintiff's Negligence Claim Under the New Mexico Tort Claims Act, filed May 19, 2011 (Doc. 19), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Sam Bregman
Eric Loman
The Bregman Law Firm, P.C.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Jerry A. Walz
Alfred Creecy
Walz and Associates
Albuquerque, New Mexico

    *Attorneys for Defendants Los Lunas Schools Board of Education, Bernard Saiz, and Maris Zuniga*

-34-

Henry F. Narvarez
Martin R. Esquivel
Narvaez Law Firm, PA
Albuquerque, New Mexico

*Attorneys for Defendants Kelly Lee, Rance Hall, Gerald Sanchez, Michael Carroll,*
    *and James Romero*